Joel STOKES, Appellant,

v.

NATIONAL PRESTO INDUSTRIES,
INC., Respondent.

No. WD 64182.

Missouri Court of Appeals,
Western District.

April 12, 2005.

Application for Transfer to Supreme Court
Denied May 31, 2005.

Application for Transfer Denied
Aug. 30, 2005.

See also 119 S.W.3d 193.

Paul Redfearn III, Kansas City, for appellant.

William Lynch, Kansas City, Mark Arnold, St. Louis, for respondent.

PAUL M. SPINDEN, Presiding Judge.

Joel Stokes was severely burned when, as a 13–month–old toddler, he pulled over a deep fryer and dumped hot oil on himself. Stokes' parents, acting on their son's behalf, sued the deep fryer's manufacturer, National Presto Industries, Inc., and the boy's grandmother, who was cooking with the deep fryer when the mishap occurred.

Stokes appeals the jury's verdict for National Presto. The jury returned a verdict for Stokes against the grandmother, but Stokes dismissed that action.

Stokes asserts that the circuit court erred in excluding evidence concerning substantially similar pullover accidents involving similar deep fryers manufactured by National Presto and in excluding evidence regarding correspondence between National Presto and the Consumer Products Safety Commission and Underwriter Laboratories concerning the danger of National Presto's deep fryers. He also claims that the circuit court erred in denying his request for discovery of claims and lawsuits involving similar incidents with National Presto's similar deep fryers after Stokes' injury. We reverse the circuit court's judgment and remand for a new trial.

Stokes' injury occurred while his grandmother, Diane Scheu, was heating cooking oil in National Presto's deep fryer, a Kitchen Kettle model. Scheu set it on an island counter and plugged the electrical cord into a receptacle on the counter's side. The cord hung over the counter's edge. Stokes pulled on the cord. The deep fryer slid off the counter and spilled hot oil on Stokes, seriously injuring him.

Stokes sued Scheu for negligence and National Presto for products liability and negligence. Stokes claimed that the deep fryer was defective because it slid too easily—that National Presto should have been equipped it with rubber feet and an electrical cord that would have released when tugged by a young child. A jury returned a verdict for National Presto but against Scheu in the amount of $500,000.

The circuit court denied Stokes' post-trial motions concerning National Presto's and Scheu's separate motions for a new trial, but it granted Stokes' motion for

additur against Scheu in the amount of $1.5 million. Scheu declined the additur, which necessitated a new trial on the issue of damages. Stokes attempted to appeal the circuit court's judgment to this court, but we dismissed the appeal after finding that Stokes filed it before the circuit court had issued a final judgment. *Stokes v. National Presto Industries, Inc.*, 119 S.W.3d 193 (Mo.App.2003). Stokes dismissed with prejudice his claims against Scheu, and the circuit court entered judgment for National Presto. Stokes then filed this appeal.[1]

■ Stokes first contends that the circuit court erred in excluding evidence concerning substantially similar "pullover" accidents involving similar deep fryers manufactured by National Presto. We agree.

The Kitchen Kettle model was a cooker, which could be used not only for deep frying, but also for roasting, braising, blanching, boiling, stewing, steaming, and slow cooking. The unit featured an aluminum pot with a cooking oil fill line, four plastic feet, and a variable electric temperature control, which detached from the heating element. Although its electrical cord detached, detachment required a stronger tug than a young child would typically exert.

National Presto manufactured three other units that were designed primarily for deep frying food: the FryBaby, the FryDaddy, and the GranPappy models. They differed only in their capacities, and, like the Kitchen Kettle, they featured an aluminum pot with a cooking oil fill-line and plastic feet. Unlike the Kitchen Kettle, their electrical cords were not detachable.

At trial, Stokes attempted to introduce evidence concerning the history of "pullover" accidents involving children and Kitchen Kettle, FryBaby, FryDaddy, and GranPappy units. The circuit court restricted evidence of other pullover accidents to incidents involving the Kitchen Kettle. Repeatedly during the trial, the circuit court declared that it was confining the evidence to the "single product idea" or "one product idea."

■ Admissibility of evidence is a matter for the circuit court's discretion, and we will not disturb the circuit court's ruling unless we discern an abuse of discretion. *Thornton v. Gray Automotive Parts Company*, 62 S.W.3d 575, 583 (Mo. App.2001). A circuit court abuses its discretion in ruling on the admissibility of evidence when its ruling is illogical and so unreasonable and arbitrary that it shocks our sense of justice or indicates a lack of careful, deliberate consideration. *Oldaker v. Peters*, 817 S.W.2d 245, 250 (Mo. banc 1991). Even if the circuit court abuses its discretion in excluding the evidence, we should not reverse the circuit court's judgment unless the abuse had a material effect on the trial. *Thornton*, 62 S.W.3d at 583.

1. National Presto contends that Stokes did not file his notice of appeal on time because the judgment became final on May 10, 2004, when Stokes dismissed his claim against Scheu. National Presto is wrong. Although Stokes dismissed his claims against Scheu, the circuit court retained jurisdiction over National Presto and entered its judgment on May 11, 2004. Pursuant to Rule 81.05(a), this judgment did not become final until 30 days after the circuit court entered its judgment. Moreover, Rule 81.05(b) says, "In any case in which a notice of appeal has been filed prematurely, such notice shall be considered as filed immediately after the time the judgment becomes final for the purpose of appeal." Stokes prematurely filed his notice of appeal on September 5, 2002; hence, even if the judgment became final on May 10, 2004, we could deem Stokes' notice of appeal of September 5, 2002, as filed immediately after May 10, 2004.

■ Evidence of accidents similar to that suffered by the plaintiff generally is admissible in negligence and products liability actions. The key element is the similarity of the incidents. The similarity of the accident at issue and the previous incident must be sufficiently close to avoid undue prejudice and confusion. *Id.* To be sufficiently similar, the accidents must be (1) of like character, (2) occur under substantially the same circumstances, and (3) result from the same cause. *Id.; Gerow v. Mitch Crawford Holiday Motors,* 987 S.W.2d 359, 364–65 (Mo.App.1999); *Benoit v. Missouri Highway and Transportation Commission,* 33 S.W.3d 663, 669 (Mo.App. 2000).

The circuit court abused its discretion by applying the wrong standard of law. Rather than focusing on the similarity of the previous incidents, the circuit court imposed a ruling that it referred to as the "single product rule" and restricted evidence of previous incidents to those involving Kitchen Kettle units. The circuit court did not disclose the source for the single product rule, and we have not been able to find any courts or experts enunciating such a rule. If indeed the prior incidents were similar to the one leading to Stokes' injuries, the circuit court should have been permitted Stokes to present evidence of them.

■ National Presto, however, contends that, because the circuit court permitted Stokes to prove three prior incidents involving Kitchen Kettle units, the circuit court did not abuse its discretion. It also points out that the jury learned from the evidence that the most frequent injuries associated with deep fryers were burns from hot oil and that such accidents often occurred when a small child tipped over the fryer by grabbing the electrical cord. The circuit court permitted Stokes to show that the Consumer Product Safety Commission had determined that deep fryers were susceptible to hot oil spills caused by children pulling on their cords. CPSC documents presented to the jury reported more than 100 incidents involving deep fryers and children during the last several years, including three deaths and 40 serious injuries. Although this evidence made clear the dangers involving deep fryers and children and established possible defect, risk, or notice, this evidence did not cure the prejudice to Stokes resulting from the circuit court's erroneous ruling.

We reach this conclusion from the closing arguments. National Presto took advantage of the circuit court's erroneous ruling to argue to the jury:

I want to talk about the evidence of other accidents, because this is—this is important. They keep talking about, you know, all these accidents and all these horrible things that National Presto knew. But what's the evidence they introduced about other accidents? *What evidence did they introduce to you about other accidents involving National Presto's products?* Three. Materio, July 25th, [19]84, accident date; Walton, February 20th, [19]86, accident date; and Smitheman, June 1st, [19]87, accident date. All before the cord tag was added.[2]

So I want to look at the actual evidence, not talk about, you know, hazards to babies and infants and talk about it on an emotional level[.] [B]ut what are the facts[?] What are the evidence of other Kitchen Kettle accidents that were actually introduced[?] 1983[:] zero. 1984[:] I think it was Materio, one.

---

2. In 1988, National Presto added a tag that warned users, by means of words and pictures, not to hang the electrical cord over a counter edge because of the danger of a child's pulling on the cord.

1985[:] zero. 1986[:] Walton or Materio, whichever one. I can go back and look in my notes. 1987[:] Smitheman, one.... [19]88[:] zero. [19]89[:] zero. [19]90[:] zero. [19]91[:] zero. [19]92[:] zero. [19]93[:] zero. [19]94[:] zero. That's the evidence of other accidents.

There's a report of CPSC after the fact involving all the different manufacturers, involving all the different deep frying products, involving all kinds of accidents. But here's what we know about known pull-over accidents—that's what these are, pull-over accidents—that National Presto knew about between 1983 and 1994. And that's the evidence. That's it. This is when the Kitchen Kettle involved in this case was manufactured, and that's when [United Laboratories] said no new requirements or revisions are necessary.[3]

National Presto took advantage of the circuit court's erroneous ruling to emphasize to the jury the small number of Kitchen Kettle accidents. Although it knew that Stokes was prepared to introduce evidence of at least 24 other pullover incidents involving National Presto deep fryers, it suggested to the jury that it knew of only three prior incidents, all occurring before National Presto added a warning tag to the Kitchen Kettle units. Because of the circuit court's erroneous ruling, Stokes' hands were tied during closing arguments to rebut National Presto's misleading argument. The circuit court's erroneous ruling had a materially prejudicial effect on the trial.

We, therefore, reverse the circuit court's judgment and remand for a new trial. On retrial, the circuit court must determine whether or not the other pullover incidents involving Presto's other deep fryers were substantially similar to Stokes' accident. If the circuit court determines that the accidents were indeed substantially similar, the circuit court shall allow Stokes to introduce relevant evidence to substantiate the occurrence of the injuries in those substantially similar accidents. The circuit court, however, should not interpret this decision to mean that it must allow Stokes to delve into all of the details of the prior incidents involving National Presto's other products.[4] For instance, Stokes sought to introduce photographs of injuries, deposition testimony, allegations from complaints filed in lawsuits against Presto, and testimony from some of the victims' parents. Such detail could be unduly prejudicial and cause confusion by becoming the proverbial "sideshow taking over the circus." What is relevant to Stokes' proceeding is the occurrence of injuries under similar circumstances.

Moreover, to the extent that the circuit court also denied Stokes' request for discovery of claims and lawsuits involving similar incidents with National Presto's similar deep fryers after Stokes' injury, that evidence could be admissible to establish that the Kitchen Kettle was dangerous. *Pierce v. Platte–Clay Electric Cooperative, Inc.*, 769 S.W.2d 769, 775 (Mo. banc 1989); *see also Herman v. Andrews*, 50 S.W.3d 836 (Mo.App.2001); *Doyle v. St. Louis–San Francisco Railway Company*, 571 S.W.2d 717 (Mo.App.1978). On retrial, Stokes should be allowed to discovery claims involving similar incidents with Na-

---

3. We added the emphasis.

4. National Presto argues that, because Stokes' offer of proof concerning the 24 other similar pullover incidents contained both admissible and inadmissible evidence, the circuit court properly excluded the evidence. The circuit court, however, would not allow any evidence of similar accidents because it confined the evidence to the "single product idea" or "one product idea." When Stokes attempted to present evidence concerning the occurrence of injuries under similar circumstances, the circuit court would not even allow such evidence.

tional Presto's similar deep fryers after his injury.

We, therefore, reverse the circuit court judgment and remand for a new trial.[5]

VICTOR C. HOWARD, Judge, and THOMAS H. NEWTON, Judge, concur.

5. Because we reach this conclusion, we need not address Stokes' remaining contention on appeal that the circuit court erred in excluding evidence regarding correspondence between National Presto and the Consumer Products Safety Commission and Underwriter Laboratories concerning the danger of National Presto's deep fryers. Although the remaining issue could arise on retrial, given the record in this appeal, we would essentially be issuing an advisory opinion if we ruled on it at this time. Stokes either failed to make sufficient offers of proof or failed to proffer the evidence to the circuit court for its ruling on admissibility. Were we to rule on this issue now, we would be impermissibly rendering an advisory opinion on evidence that was not preserved for review in this appeal and that may not be admitted during the next trial. *See* Yerington v. La–Z–Boy, Inc., 124 S.W.3d 517, 523 n. 9 (Mo.App.2004).