Billy ECKERD and Cleta
Eckerd, Appellants,

v.

COUNTRY MUTUAL INSURANCE
COMPANY, et al., Respondent.

No. ED 91431.

Missouri Court of Appeals,
Eastern District,
Division Two.

May 12, 2009.

Motion for Rehearing and/or Transfer to
Supreme Court Denied July 2, 2009.

Application for Transfer Denied
Sept. 1, 2009.

░░░
░░░

Arthur G. Muegler, Jr., St. Louis, MO, for Appellant.

Daniel E. Wilke, Julia E. Wilke, St. Louis, MO, for Respondent.

ROY L. RICHTER, Presiding Judge.

Billy and Cleta Eckerd ("the Eckerds") appeal from a judgment entered after a jury verdict in favor of Country Mutual Insurance Company ("Insurance Company") on their claim for insurance benefits. We affirm.

## I. BACKGROUND

This case arises from an insurance claim after a fire at the Eckerds' residence, located at 10400 Clover Road, Cadet, Missouri ("Residence"), and Insurance Company's failure to pay certain benefits. In June 2006, the Eckerds filed a five-count petition against Insurance Company and its agent. Insurance Company pled the Eckerds' failure to cooperate and fraud and misrepresentations as affirmative defenses. Only three claims against Insurance Company went to trial, namely those alleging total and partial breach of the insurance contract and vexatious refusal to pay. A jury returned a verdict in favor of Insurance Company on all counts.

The Eckerds bought the Residence in 2001 or 2002. It consists of seventy-two acres, a house and several outbuildings. During the course of living there, the Eckerds made improvements to the Residence and continually acquired antiques.

In November 2002 Billy's medical troubles caused the Eckerds to suffer financial hardship. As a favor to them, Billy's brother Ron Eckerd ("Ron") purchased the Residence and all of its contents via warranty deed, though he allowed the Eckerds to remain living there as renters. However, in 2004, Ron also experienced poor health. To clarify the Eckerds' rights to the property in the event of Ron's death, on July 14, 2004, Ron and Billy entered into a rent-to-own contract ("Contract") with respect to the Residence.

The Contract provided that Billy would give Ron a $1,000 down payment, and $350 every month thereafter for twenty-five years, for a total purchase price of $105,000. The Contract's terms were rent-to-own until September 20, 2005, at which time it became a contract-for-deed. The Contract provided that Billy was responsible for keeping the Residence and its contents insured. According to Billy and Ron, both men understood that ownership of the Residence included ownership of the personal property therein, and that after September 20, 2005, Billy would become the owner of the Residence and its contents.

On February 8, 2005, Billy obtained an insurance policy from Insurance Company in the amounts of $185,000 for dwelling coverage, $138,750 for personal property, $37,000 for additional living expenses, and miscellaneous coverage. Billy, however, did not disclose the rent-to-own agreement, but rather told Insurance Company that the Residence was "owner-occupied." The terms of the policy stated that it did not provide coverage in the event that the insured intentionally misrepresented mate-

rial facts or engaged in fraud in procuring the policy.

In the ensuing months, the Eckerds' financial condition continued to deteriorate. They filed for bankruptcy in April 2005 and subsequently received a full discharge.

Then, on October 17, 2005, a fire of unknown origins destroyed the Eckerds' Residence and its contents. Insurance Company's adjuster, Ken Holt ("Holt"), came to the Residence the day after the fire and requested personal property inventories from the Eckerds. Over the next few months, Holt did not provide the Eckerds with proof of loss forms, but he asked for the inventories multiple times. Sometime in 2006, the Eckerds provided Insurance Company with documentation of their personal property losses, but the ages and prices of many items were indicated by only a question mark. The Eckerds never received notice from Insurance Company that their proofs of loss were unacceptable.

The Eckerds' inventories and valuation of their personal property was a crucial issue at trial and formed the basis for Insurance Company's misrepresentation defense. Namely, Insurance Company highlighted the vast discrepancies between the property values submitted in the Eckerds' proofs of loss and their representations in taking out the insurance policy and in filing for bankruptcy. For example, the Eckerds' proofs of loss indicate they owned a $25,000 Jesse James poster, yet this item is absent from both their insurance application and their bankruptcy schedules.

In July 2006, one month after the Eckerds filed this action, Insurance Company paid them $185,000 for the total loss of their dwelling. Insurance Company also paid for the costs of debris removal from the Residence and several thousand dollars in additional living expenses. Insurance Company did not reimburse the Eckerds for the loss of their personal property. The Eckerds appeal.

## II. DISCUSSION

■ In their first point on appeal, the Eckerds argue that the trial court erred in denying their Motion to Strike Alleged Answer Affirmative Defenses ("Motion to Strike"). We disagree.

As affirmative defenses, the Insurance Company pled that the Eckerds had failed to cooperate and had intentionally concealed and misrepresented material facts to procure the policy. In response, the Eckerds filed the Motion to Strike alleging that Insurance Company had insufficiently pled their affirmative defenses. The Eckerds argued that the defenses alleged "bare legal conclusions," failed to inform them of the facts relied upon, and failed to allege essential elements of the defenses. The trial court denied the Motion to Strike.

The record reveals that the Eckerds waived their objections to the particularity of Insurance Company's allegations because they failed to file a motion for a more definite statement. In *Clark v. Olson*, 726 S.W.2d 718 (Mo. banc 1987), the plaintiff filed a motion to dismiss the defendant's fraud defense and claimed that the defendant had failed to plead fraud with the requisite particularity. 726 S.W.2d at 719. The Missouri Supreme Court held that the trial court erred when it granted the motion to dismiss under those circumstances. *Id.* According to the Court, the plaintiff should have filed a motion for a more definite statement. *Id.* The failure to do so constituted waiver "as to the particularity of the averments of fraud." *Id.*

The case at bar presents a similar factual situation. The Eckerds filed the Motion to Strike rather than a motion for a more definite statement, and cited the same deficiencies in the pleadings as did the *Clark* plaintiff. Had the Eckerds filed a motion for a more definite statement, Insurance Company would have been on notice that its pleadings were allegedly deficient and would have had an opportunity to cure them. Per the Missouri Supreme Court's reasoning in *Clark*, the Eckerds have waived their objections to the particularity of Insurance Company's affirmative defenses. Point denied.

The Eckerds' second and third points claim that the trial court erred in admitting evidence related to their bankruptcy.[1] Because they rely on the same argument section, we address them together.

The Eckerds' second point argues that the trial court erred in admitting the testimony of bankruptcy attorney Millicent Dohr ("Dohr"). Their third point claims that the trial court erred in admitting their bankruptcy court file.

Points two and three collectively present numerous reasons why evidence relating to the Eckerds' bankruptcy was not admissible. First, the Eckerds argue that the objectionable evidence was not relevant and raised collateral issues that served to confuse the jury.

The admission of evidence lies within the sound discretion of the trial court, and we review their decision to admit or exclude evidence for an abuse of discretion. *Strong v. Am. Cyanamid Co.*, 261 S.W.3d 493, 518–9 (Mo.App. E.D.2007). We presume the trial court's ruling to be correct, and reverse only when it is so arbitrary and unreasonable as to shock one's sense of justice. *Id.* at 519.

To be admissible, evidence must be logically and legally relevant. *Crow v. Crawford & Co.*, 259 S.W.3d 104, 122 (Mo. App. E.D.2008). "Evidence is logically relevant if it tends to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence...." *Shelton v. City of Springfield*, 130 S.W.3d 30, 37 (Mo.App. S.D.2004) (quoting *State v. Tisius*, 92 S.W.3d 751, 760 (Mo. banc.2002)). Legal relevance requires balancing the probative value of the evidence versus its prejudicial effect on the jury. *Shelton*, 130 S.W.3d at 37. The determination of whether evidence is legally relevant is within the sound discretion of the trial court. *Id.*

Evidence of the Eckerds' bankruptcy was admissible. The value of the Eckerds' personal property was the main issue at trial. In February 2005, the Eckerds represented to Insurance Company that their personal property was worth $138,750. Just two months later, in April 2005, the Eckerds represented to the bankruptcy court that their personal property was worth $800. As discussed in point one, the Insurance Company's affirmative defenses of fraud and material misrepresentation were properly in the case. Therefore, the value the Eckerds assigned to their property in the bankruptcy in April 2005 was directly relevant to a material issue.

Dohr's testimony was also admissible. Dohr primarily testified regarding omissions in the Eckerds' bankruptcy schedules as compared to their representations

---

1. The Eckerds' second and third points relied on do not conform to Rule 84.04(d). However, because they do not impede the disposition of the case on the merits, we review them nonetheless. *See Superior Ins. Co. v. Universal Underwriters Ins. Co.*, 62 S.W.3d 110, 118 (Mo.App. S.D.2001).

to Insurance Company. For example, in February 2005 the Eckerds informed Insurance Company that they owned the Residence, but told the bankruptcy court in April 2005 that they made a rent payment and not a loan payment. Dohr did not opine as to whether the Eckerds had committed fraud or perjured themselves in bankruptcy court, but rather testified only to the facts. Because the bankruptcy file and Dohr's testimony were highly relevant to the issue of whether the Eckerds had committed fraud or misrepresented material facts in obtaining their insurance policy, both were admissible.

Evidence of the bankruptcy was also admissible because the Eckerds injected the bankruptcy issue into the case. On direct examination, the Eckerds' counsel asked Billy whether he had filed for bankruptcy and questioned him about certain disclosures to his bankruptcy attorney. "A party who has introduced evidence concerning a certain fact may not on appeal complain that his opponent was allowed to introduce related evidence, in rebuttal or explanation." *Bowls v. Scarborough*, 950 S.W.2d 691, 702 (Mo.App. W.D. 1997).[2]

Next, the Eckerds claim that pursuant to Section 379.140 RSMo 2000, Insurance Company was estopped from contending the insured property was worth less than the insured value in the policy.

Missouri's valued policy statute operates to prohibit insurance companies from asserting that the value of the insured's interest is less than the full face value of the policy. Section 379.140. The purpose of the statute is "to prevent insurance companies from taking reckless risks in order to obtain large premiums by advising them in advance that they would be held to the value agreed upon when the policy was issued." *Gamel v. Cont'l Ins. Co.*, 463 S.W.2d 590, 593 (Mo.App. E.D. 1971) (citing *Daggs v. Orient Ins. Co. of Hartford*, 136 Mo. 382, 38 S.W. 85 (1896)).

The Eckerds contend that, per the valued policy statute, Insurance Company is estopped to deny that their personal property had a value of less than $138,750, the amount for which it was insured. The Eckerds argument misstates the case law. Under the statute, the policy value is conclusive upon the parties "absent fraud, misrepresentation, or collusion." *DeWitt v. Am. Family Mut. Ins. Co.*, 667 S.W.2d 700, 708 (Mo. banc 1984). "Fraudulent misrepresentation utilized to secure excessive coverage . . . removes the protection of the statute." *Hodge v. Cont'l W. Ins. Co.*, 722 S.W.2d 133, 136 (Mo.App. S.D.1986). Given the facts of the case, the jury could have deemed the Eckerds' statements to Insurance Company to be fraudulent or intentional misrepresentations of their personal property values.[3] Therefore, the valued policy statute did not preclude Insurance Company from raising these defenses. *See Hodge*, 722 S.W.2d at 136.

Finally, the Eckerds present four arguments to support their claim that In-

---

2. We also note that the Eckerds did not object when Insurance Company referenced the bankruptcy during opening statement, and therefore they did not preserve that issue for review. *Eltiste v. Ford Motor Co.*, 167 S.W.3d 742, 754 (Mo.App. E.D.2005).

3. In a case with strikingly similar facts, the Eastern District of Missouri granted summary judgment for the insurer on its misrepresenta-

tion defense, finding there was "insufficient evidence for a jury to find that Plaintiff did not knowingly and/or willfully conceal or misrepresent any material fact or circumstance relating to the policy before or after the loss." *Mathes v. Mid–Century Ins. Co.*, No. 4:06–CV–01161SNL, 2008 WL 2439744, at *3 (E.D.Mo. 2008).

surance Company waived its policy defenses. First, the Eckerds argue that Insurance Company's various payments under the policy, including $185,000 for dwelling coverage, constituted waiver. The one case the Eckerds cite is not on-point, and we find no case law to support their argument. To the contrary, "[w]here a policy covers two items … a tender of payment of the loss on one item is not a waiver of the right to insist on a forfeiture as to the other item." 44 Am.Jur.2d *Insurance* section 1672 (1982).

■■■ The Eckerds next two arguments regarding waiver concern the proof of loss forms. First, they argue that Insurance Company waived its policy defenses when it failed to provide them with proof of loss forms. Should an insurer fail to provide proof of loss forms to an insured, the insurer waives only its ability to require such forms from the insured. *See Mathes v. Mid–Century Ins. Co.,* No. 4:06–CV–01161SNL, 2008 WL 2439744, at *3 (E.D.Mo.2008); *Meier v. Eureka–Sec. Fire & Marine Ins. Co. of Cincinnati,* 168 S.W.2d 127, 134 (Mo.App. E.D.1943). We find no case law which holds that an insurer's failure to provide proof of loss forms results in a waiver of other policy defenses.

■■■ Next, the Eckerds claim that Insurance Company impliedly accepted their February 1, 2006 proof of loss forms when they failed to respond to said proofs of loss within fifteen days, and thereby waived their policy defenses. Beginning October 18, 2005, the Eckerds knew that Insurance Company needed a list of the Eckerds' lost personal property, and that Insurance Company would accept any format that supplied all of the relevant information. When the Eckerds finally submitted inventories, many ages and prices of items were indicated only by a question mark. Moreover, the Eckerds' inventories claimed, for example, that they lost $20,000 in jewelry in the fire, but they had omitted any mention of jewelry in their policy application. Therefore, we cannot say that Insurance Company waived any policy defenses through their treatment of the proof of loss forms. *See* 46A C.J.S. *Insurance* section 1814 (2006) (stating that an insurer who retains proofs of loss without objecting waives only its ability to claim that the proofs do not satisfy the policy requirements).

■■■ Finally, the Eckerds claim that Insurance Company's "retention of the premium constitutes a confirmation of the insurance policy and a waiver of policy defenses." The Eckerds do not cite any case law in support of this proposition. Moreover, "[t]he general rule is that a return of the premium is not essential to the avoidance of a policy, nor is its retention a waiver, especially where the insured was guilty of fraud in obtaining the policy." 44 Am.Jur.2d *Insurance* section 1646 (1982). *See also* 46A C.J.S. *Insurance* section 2089 (2006).

As such, the Eckerds second and third points relating to evidence of their bankruptcy are denied.

■■■ In their fourth point on appeal, the Eckerds argue that the trial court erred in denying their Motion for a Directed Verdict and Motion for Judgment Notwithstanding the Verdict ("J.N.O.V."). We disagree.

■■■ In reviewing the trial court's denial of a motion for a directed verdict and a motion for judgment notwithstanding the verdict, we must determine whether the plaintiff made a submissible case. *Drury v. Mo. Youth Soccer Ass'n, Inc.,* 259 S.W.3d 558, 565 (Mo.App. E.D.2008).

First, the Eckerds argue they were entitled to a directed verdict or a J.N.O.V.

because Insurance Company stipulated to each essential element of their breach of contract claims. As stated, the value of the Eckerds' personal property was the main issue at trial. Insurance Company stipulated to the fact that they had issued a policy to the Eckerds, that said policy was in effect when the Eckerds suffered a fire loss, and that Insurance Company had notice of the fire by October 18, 2005. Insurance Company never stipulated to the amount of property damage the Eckerds suffered, which was the main issue in the case. In fact, Insurance Company pled the Eckerds' misrepresentation of personal property values as an affirmative defense, and heavily contested the damages issue throughout trial.

The Eckerds then claim that they were entitled to a directed verdict or a J.N.O.V. because Insurance Company did not sufficiently plead their affirmative defenses, waived those defenses, and was estopped from asserting them. In support of their argument, they incorporate by reference their arguments in points one and two. Having already disposed of those arguments, we see no need to revisit them here. Point four is denied.

■■■■ The Eckerds last six points on appeal pertain to alleged error in the jury instructions. An instruction will be given or refused by the trial court according to the law and the evidence in the case. *Nagaragadde v. Pandurangi*, 216 S.W.3d 241, 244 (Mo.App. W.D.2007). We review the evidence in the light most favorable to the submission of the instruction. *Id.* The issue of whether the jury was properly instructed is a question of law, to which we give little deference. *Id.* A new trial is warranted when the challenging party can show that it misled, misdirected, or confused the jury. *Id.*

In their fifth and sixth points on appeal, the Eckerds argue that the trial court

erred in refusing to give verdict directing Refused Instruction B ("Instruction B") and Refused Instruction C ("Instruction C"). We disagree.

Instruction B directed the jury to find that Insurance Company was liable to the Eckerds for damages. Instruction C differed from Instruction B only in that it made an allowance for Insurance Company's affirmative defenses. The Eckerds argue that the trial court erred in refusing to give Instructions B and C because Insurance Company stipulated to each essential element of their breach of contract claims, and because Insurance Company was not entitled to its affirmative defenses. Again, we have already discussed why these arguments are not persuasive. Namely, Insurance Company did not stipulate to damages, and the Eckerds failed to file a motion for a more definite statement. Points five and six are denied.

■■■ In their seventh point on appeal, the Eckerds argue that the trial court erred in refusing to give Refused Instruction D ("Instruction D"). We disagree.

■■■ Where there is no applicable MAI, the instruction given shall be simple, brief, impartial, and free from argument. Mo. R. Civ. P. 70.02(b). All instructions must submit ultimate facts, and not abstract statements of law. *Henderson v. St. Louis Housing Auth.*, 605 S.W.2d 800, 803 (Mo. App. E.D.1979). Instruction D had no applicable MAI. As proposed by the Eckerds, it consisted of lengthy and abstract statements of law taken from two statutes concerning proof of loss forms. Thus, it did not conform to any of the aforementioned requirements, and the trial court's failure to submit this instruction did not mislead or confuse the jury in any way. Point denied.

In their eighth point on appeal, the Eckerds argue that the trial court erred in refusing to give Refused Instruction E ("Instruction E"). We disagree.

Instruction E was a withdrawal instruction that asked the jury not to consider evidence concerning the Eckerds' failure to disclose the rent-to-own contract to the bankruptcy court or their valuing their personal property at $800 in their bankruptcy schedules. Giving a withdrawal instruction is within the sound discretion of the trial court. *Foster v. Catalina Indus., Inc.*, 55 S.W.3d 385, 394 (Mo.App. S.D.2001). Failure to give one is reversible error only when the evidence sought to be withdrawn creates a false issue. *Id.* As discussed, the bankruptcy evidence was highly relevant to Insurance Company's fraud and misrepresentation defense. A withdrawal instruction was not warranted under the circumstances. Point denied.

In their ninth and tenth points on appeal, the Eckerds argue the trial court erred in giving Instruction 6 and Instruction 7. Eckerd's objections to Instructions 6 and 7 were not properly preserved for appeal and therefore are not before this Court for review.

## III. CONCLUSION

The judgment of the trial court is affirmed.

LAWRENCE E. MOONEY and GEORGE W. DRAPER III, JJ., concur.