S.M.R., a minor, by and through her Next Friend and Mother, Lisa Marie RYAN,

Jeff Madison Ryan, and Lisa Marie Ryan, Plaintiffs–Appellants,

v.

McDonald's Corporation, and Kris Davison, Inc., Defendants–Respondents.

No. SD 31456.

Missouri Court of Appeals, Southern District, Division Two.

Feb. 13, 2013.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 7, 2013.

Application for Transfer to Supreme Court Denied April 30, 2013.

Patrick J. Berrigan, and, Kathleen M. Hagen, Kansas City, MO, for Appellants.

Jeffrey J. Brinker, and, Aaron I. Mandel, Clayton, MO, for Respondents.

**DON E. BURRELL, J.**

Plaintiffs S.M.R. ("Daughter"), Jeff Madison Ryan ("Father"), and Lisa Marie Ryan ("Mother") appeal the judgment adopting a jury's verdict in favor of McDonald's Corporation and Kris Davison, Inc. (collectively "Defendants") on Plaintiffs' claim that Defendants were liable for Daughter's food-borne illness.[1] Plaintiffs' specific factual allegation was that Daughter's E. coli 0157:H7[2] infection resulted from a defective cheeseburger she consumed at a McDonald's restaurant in Branson ("Restaurant") in July 2001.

Plaintiffs' sole claim on appeal is that the trial court abused its discretion "in sustaining Defendants' motion *in limine* which prevented Plaintiffs from presenting evidence that three people besides [Daughter] were hospitalized with E. coli 0157:H7 infections within days of [Daughter] after eating hamburgers at a nearby McDonald's restaurant [ ("the Marshfield restaurant") ] that was using the same meat supplier as [Restaurant.]" Finding no abuse of discretion in the trial court's decision to exclude the evidence at issue, we affirm.

## Applicable Principles of Review and Governing Law

"[T]he trial court 'enjoys considerable discretion in the admission or exclusion of evidence, and, absent clear abuse of discretion, its action will not be grounds for reversal.'" *Moore v. Ford Motor Co.*, 332 S.W.3d 749, 756 (Mo. banc 2011) (quoting *State v. Mayes*, 63 S.W.3d 615, 629 (Mo. banc 2001)). "The focus on appeal of a ruling excluding evidence is not whether evidence was admissible but on whether the trial court abused its discretion in excluding the evidence." *Payne v. Cornhusker Motor Lines, Inc.*, 177 S.W.3d 820, 836 (Mo.App. E.D.2005). "We presume

---

1. Plaintiffs' petition asserted the following theories of liability: "breach of common law implied warranty of fitness for consumption" (Count I); "breach of common law implied warranty of fitness for a particular purpose under the UCC" (Count II); strict liability (Count III); negligence (Count IV); and "loss of services" (Count V). The legal file does not contain the jury instructions. As a result, we are unable to determine which legal theory or theories of liability were submitted to the jury.

2. The parties and witnesses referred to the illness associated with this lawsuit by differing terms such as "Escherichia coli 0157:H7," "Enterohemorrhagic Escherichia coli Infection[ ][,]" "E. coli," "E. coli 0157," and "E. coli 0157:H7." In their motions in limine, Defendants acknowledge the pathogen as "E. coli 0157:H7 bacteria[,]" and we will reference the infection generally as "E. coli 0157:H7" except where a different description is quoted from testimony.

the trial court's ruling to be correct, and reverse only when it is so arbitrary and unreasonable as to shock one's sense of justice." *Eckerd v. Country Mut. Ins. Co.*, 289 S.W.3d 738, 743 (Mo.App. E.D.2009). "Evidence must be both logically and legally relevant to be admissible." *Crow v. Crawford & Co.*, 259 S.W.3d 104, 122 (Mo. App. E.D.2008). "Logically relevant evidence makes a fact of consequence to the outcome of the case more or less probable, or corroborates other relevant evidence." *Moon v. Hy–Vee, Inc.*, 351 S.W.3d 279, 285 (Mo.App. W.D.2011). "Legal relevance requires balancing the probative value of the evidence versus its prejudicial effect on the jury." *Eckerd*, 289 S.W.3d at 743. "A court may exclude evidence that may have a prejudicial effect, even though the evidence is logically relevant, when the risk of unfair prejudice outweighs the probative value." *Howard v. City of Kansas City*, 332 S.W.3d 772, 786 (Mo. banc 2011).

### Facts and Procedural Background [3]

Before the presentation of evidence began, Defendants argued that Plaintiffs should not be allowed to introduce evidence about illnesses Tabitha McLaughlin and two children, [S.M.] and [M.B.], suffered after they dined at the Marshfield restaurant.[4] Plaintiffs' counsel argued that the other instances of illness involved "the same incident" and were not simply "similar occurrences" in that both Restaurant and the Marshfield restaurant received their meat from Lopez Foods, Inc. ("Lopez Foods"), and the other individuals fell ill "after eating a hamburger at [the Marshfield restaurant] within days of [Daughter] becoming ill[.]"

Defendants cited deposition testimony from their expert witness, Dr. Eugene Gangarosa, that different numbered strains of E. coli were identified for Daughter, M.B. and Ms. McLaughlin.[5] According to Dr. Gangarosa, the numbers are used to refer to "a particular strain of the E. coli bacteria that's already been identified[.]" Plaintiffs' position was that they did not need expert testimony that there was "an outbreak" of E. coli 0157:H7, and just because one expert had indicated that the strains of E. coli 0157:H7 were not identical did not mean that the same source could not be involved. Defendants responded that presenting evidence about the other individuals would "end up" in a trial of all those claims because Defendants alleged "that there were all sorts of other potential causes" for the illnesses the other individuals had suffered. The trial court granted Defendants' motion *in limine* to exclude evidence of illnesses and claims by other persons.

At an appropriate time during the trial, Plaintiffs made an offer of proof regarding the evidence the court had indicated would be excluded. Kris Davison, the CEO of Kris Davison, Inc., testified that while someone else owned the Marshfield restaurant, "[t]o the best of [his] understanding" and "[a]s far as [he was] aware[,]" McDonald's restaurants in Missouri all received their meat from the same supplier, Lopez Foods. Mr. Davison testified that he owned and operated six McDonald's restaurants, including three in Branson, and that McDonald's Corporation controls

---

3. We present only the facts relevant to the resolution of Plaintiffs' point on appeal.

4. The parties' attorneys informed the trial court that there were "ongoing lawsuits" involving M.B. and S.M. regarding the meals

they had consumed at the Marshfield restaurant.

5. The E. coli strain associated with Ms. McLaughlin did match the strain associated with S.M.

various aspects of the restaurants run by its franchisees, including the type of grill used and the suppliers for beef products.

Plaintiffs' offer of proof also included Ms. McLaughlin's testimony that on July 21, 2001, she and her daughter "had cheeseburgers [at the Marshfield restaurant]" and "a couple of days" later they both "got very sick." Ms. McLaughlin said that her daughter was hospitalized. Ms. McLaughlin had been "told" that both of their illnesses resulted from "E. coli." Plaintiffs' counsel also informed the trial court that he "was unable to get ... the mother of [M.B.]" to court at that particular moment, but he anticipated that she would testify that on July 9, 2001 her daughter ate a cheeseburger at the Marshfield restaurant and then "developed E. coli infection and HUS." [6] The foregoing constituted the entirety of Plaintiffs' offer of proof. At its conclusion, the trial court maintained its decision to exclude the proffered evidence.

The evidence at trial was that on July 2, 2001, Plaintiffs, accompanied by other children in the family, traveled from the Kansas City area and picked up Mother's mother ("Grandmother") in Bolivar to vacation in Branson. Daughter was eight years old at the time. Grandmother kept a journal of the trip that was admitted into evidence as Plaintiffs' Exhibit 14. The family first ate together on the trip at a "KFC" restaurant. Later that day, they ate "salad food" they had brought with them. That night, Daughter had cheese pizza. The next morning, July 3rd, Daughter ate cereal at the hotel. Grandmother did not eat because she had a stomach ache. Later that same day, the family ate "at McDonald's" near one of the Branson tourist attractions they visited,

and Daughter "had a cheeseburger Happy Meal." That evening, the family went to a dinner show, but Daughter "was not feeling good at all." On the morning of July 4th, Daughter threw up repeatedly, and Mother and Father took her to the hospital, where she received an IV and an injection before being released. That same morning, Grandmother was "hurting so bad" that she "curled up in a ball[.]" On July 5th, Daughter was "still not getting better[,]" and the family returned home.

On the morning of July 6th, Daughter had diarrhea that included blood, and she was again taken to the hospital. Dr. Alon testified that Daughter's medical records from her hospitalization in July 2001 included a positive test for "E. coli 0157" on July 8, 2001. Daughter also developed HUS, but Dr. Alon agreed that "somewhere between August and November of 2001" Daughter "achieved complete recovery from HUS[.]"

Dr. James Marsden, a university research coordinator, whose field was "food safety and security" (focused primarily on "meat and poultry products"), testified for Plaintiffs that he had reviewed Daughter's medical records and "some depositions" of Plaintiffs. He explained that "E. coli 0157:H7 is a very small subset of the family of E. coli bacteria. It's called a pathogen because it causes disease." Dr. Marsden said that E. coli 0157:H7 is primarily, but not exclusively, associated with cattle. He testified that meat may be contaminated during the slaughtering process with bacteria from the hide or intestinal track of the animal. Dr. Marsden said that although additional precautions are in place now, "many interventions were in place in 2001" to prevent E. coli 0157:H7 from

---

**6.** Daughter's doctor who specialized in pediatric nephrology, Dr. Uri Alon, testified that HUS is "hemolytic uremic syndrome"—a disorder of the kidneys that sometimes accompa-

nies an E. coli 0157:H7 infection. He explained that the condition reduces the ability to make the urine necessary for the removal of toxins from the body.

winding up in meat, but ultimately "the safety net ... is the cooking process. If the product is adequately cooked, then E. coli 0157:H7 is destroyed, killed, and ... it no longer poses a risk." [7] He testified that other foods, such as lettuce and spinach, may be contaminated with E. coli 0157:H7 when manure from nearby cattle farms is blown in the air as dust and then settles on the plants. Dr. Marsden also testified that cross-contamination can happen in the home during food preparation and that the bacteria may also be transmitted directly from person to person.

Another expert witness for Plaintiffs, Dr. Archana Chatterjee, specialized in "pediatric infectious diseases." Her work on the case involved "review[ing the] medical literature and review[ing] the documents that [Plaintiffs' counsel's] office sent [her]." Dr. Chatterjee agreed that "many potential sources ... for 0157:H7 exposure" exist, and outbreaks have been associated with raw vegetables and "other raw foods." She confirmed that in the course of her work she did not "obtain any information that anyone else who ate at [Restaurant] on July 3, 2001, was sickened[.]" Dr. Chatterjee had written an article noting an incubation period of the infection of one to five days, but she agreed that the incubation period for E. coli 0157:H7 averages three to four days. She admitted that Daughter's first symptoms of illness appeared approximately six to eight hours after eating at Restaurant, and she had seen no medical literature stating that the incubation period could be as short as six to eight hours.

Dr. Gangarosa, an emeritus professor in the School of Public Health at Emory University, testified on behalf of Defendants that the "[i]ncubation period is the time required from the onset of ingestion of the pathogen until the onset of first symptoms." Dr. Gangarosa testified that the incubation period for E. coli 0157:H7 was an average of "three to four days" based upon an overall range of two to eight days. He knew of no "peer review literature" stating that the incubation period could be six to eight hours for E. coli 0157:H7.

Dr. Gangarosa explained that it generally took three to four days for E. coli. 0157:H7 contained in a protein or fatty food to move through the stomach and small bowel before "nesting" in the colon, multiplying, invading colon cells, and producing the toxins that cause symptoms. He said it was flawed reasoning to conclude that the last meal Daughter consumed before becoming sick was the cause of her illness. Dr. Gangarosa testified that under Plaintiffs' theory of causation, "[Daughter's] case had an incubation period of seven to eight hours. It doesn't fit. It—it tells me that her exposure had to have occurred earlier." He testified that bloody diarrhea "follows four to six days after ingestion." Dr. Gangarosa concluded that Daughter's exposure to E. coli 0157:H7 "must have occurred two to three days before" eating at Restaurant.

On February 4, 2011, the jury returned a verdict in favor of Defendants. After the trial court entered its judgment in conformity with that verdict, Plaintiffs timely filed a motion for new trial, which asserted, *inter alia*, that the trial court erred "in failing to allow [P]laintiffs to present evidence that [M.B.], [S.M.,] and [Ms.] McLaughlin each became ill after

---

**7.** Dr. Marsden testified that if meat reaches the temperature of 160 degrees, there is "instantaneous elimination of E. coli 0157:H7." Additionally, if beef is cooked to 151 degrees and held at that temperature for 41 seconds, "it's equally safe[.]" He could not recall the exact time necessary to eliminate the bacteria at a temperature of 155 degrees, but estimated that "it would be a few seconds."

consuming a hamburger contaminated with E. coli 0157:H7 from [the Marshfield restaurant] in southwest Missouri in July of 2001 just like [Daughter], within five days to eighteen days of each other, *with the meat coming from the same source, Lopez Foods, Inc.*" (Emphasis as stated in original.) That motion was deemed denied 90 days after it was filed, and this appeal timely followed. *See* Rules 78.06, 81.04(a), and 81.05(a)(2)(A).[8]

## Defendants' Arguments for Dismissal of Plaintiffs' Appeal

Before addressing the merits of Plaintiffs' appeal, we first address Defendants' assertion that Plaintiffs' "failure to follow Rule 84.04 in the preparation of [their] brief is grounds for dismissal[,]" citing *Federbush v. Federbush*, 667 S.W.2d 457, 458 (Mo.App. E.D.1984). Defendants contend the appeal should be dismissed because Plaintiffs' statement of facts is "not ... fair and concise" and is not "relevant to the questions presented for determination without argument[,]" comparing it to *Vodicka v. Upjohn Co.*, 869 S.W.2d 258, 263–65 (Mo.App. S.D.1994) (where we dismissed the appeal because the statement of facts was deemed argumentative and unfair, the brief did not provide page references to the record, and a ruling was appealed instead of the judgment).

To their credit, Plaintiffs accept responsibility for certain failures in their presentation of the facts, and they acknowledge that this court has dismissed several appeals for failure to comply with the brief-

ing requirements of Rule 84.04. *See, e.g., Reed v. Cirtin*, 280 S.W.3d 143, 145–46 (Mo.App. S.D.2009); *Rothschild v. Roloff Trucking*, 238 S.W.3d 700, 703 (Mo.App. E.D.2007); and *Hampton v. Davenport*, 86 S.W.3d 494, 497 (Mo.App. S.D.2002). Plaintiffs admit that "[i]n hindsight" they should have included Dr. Gangarosa's deposition testimony that different strains of E. coli 0157:H7 were found in samples taken from Daughter and the three other individuals proffered by Plaintiffs.[9] After acknowledging that failure, Plaintiffs rightly note that they were not required to include all of the evidence favorable to the verdict because they are not challenging the sufficiency of the evidence; instead they are "rais[ing] only a single, narrow issue in this appeal[:] whether the trial court abused its discretion in excluding [Plaintiffs'] 'similar incidents' evidence from trial." [10] They compare their brief to the one at issue in *Stevens v. Craft*, 956 S.W.2d 351, 353 (Mo.App. S.D.1997), where this court criticized the statement of facts but did not dismiss the appeal.

"Whether an appeal will be dismissed for failure to comply with Rule 84.04 is discretionary." *Hampton*, 86 S.W.3d at 496. "Ultimately, our determination hinges on whether the violations of Rule 84.04 impede[ ] disposition of the merits by failing to make the issues on appeal clear to the parties and the appellate court." *Ludwig v. Ludwig*, 126 S.W.3d 466, 471–72 (Mo.App. W.D.2004). Here, Plaintiffs' brief neither prejudices Defendants nor impedes our review be-

---

8. All rule references are to Missouri Court Rules (2012).

9. Plaintiffs do not cite the record but nonetheless concede in their reply brief that Ms. McLaughlin and her daughter "shared an identical strain of E. coli 0157:H7 bacteria, which differed from the strains of [Daughter] and [M.B.]."

10. We pause to note that Plaintiffs could not have challenged the sufficiency of the evidence supporting the verdict as a verdict in favor of a party without the burden of proof needs no such support. *See White v. Director of Revenue*, 321 S.W.3d 298, 305 (Mo. banc 2010).

cause the point is limited to the exclusion of proffered evidence, and the argument portion of the brief addresses Plaintiffs' offer of proof. As a result, we decline to dismiss the appeal on the ground that the statement of facts fails to comply with the requirements of Rule 84.04.

Defendants also assert that Plaintiffs failed to preserve their contention for our review because their point "challenges only the trial court's ruling on a motion in limine[.]" It is true that "a point relied on is technically deficient by referring only to a ruling on a motion in limine[.]" *Arrington v. Goodrich Quality Theaters, Inc.*, 266 S.W.3d 856, 863 (Mo. App. S.D.2008). But we "nonetheless favor a disposition on the merits as long as the point gives this Court and the opposing party sufficient notice as to the issue presented on appeal." *Id.* Such notice is present here. After the trial court granted Defendants' motion *in limine*, Plaintiffs made an offer of proof and subsequently claimed in their motion for new trial that the trial court erred in "failing to allow [P]laintiffs to present evidence that [the other three individuals] each became ill after consuming a hamburger [from the Marshfield restaurant] contaminated with E. coli 0157:H7[.]" Defendants' assertion that Plaintiffs' appeal should be dismissed for violations of Rule 84.04 is denied, and we will address Plaintiffs' error claim on the merits.

### Analysis

Plaintiffs contend that the trial court abused its discretion by not admitting evidence of E. coli 0157:H7 infections in three other people.[11] Plaintiffs argue that these "similar incidents" were logically relevant to their claim of a defective product in that they corroborated "that the source of [Daughter's] contamination was indeed the McDonald's hamburger [sic] that she consumed on July 3rd, 2001." In negligence or products liability cases, evidence of a similar incident is admissible if "the evidence is relevant and sufficiently similar to the injury-causing incident so as to outweigh the concerns of undue prejudice and confusion of the issues." *Thornton v. Gray Auto. Parts Co.*, 62 S.W.3d 575, 583 (Mo.App. W.D.2001); *see also Stokes v. National Presto Indus., Inc.*, 168 S.W.3d 481, 484 (Mo.App. W.D.2005). Plaintiffs point out that in *Stokes*, the Western District held that the trial court abused its discretion in excluding evidence of other accidents involving a deep fryer pulled over by a child simply because the fryer models involved in similar incidents were not identical to the one at issue. 168 S.W.3d at 484. But it should be noted that the case was remanded to the trial court to "determine whether or not the other pullover incidents involving [the defendant's] other deep fryers were substantially similar to [the plaintiff's] accident." *Id.* at 485. Thus, while the separate instances "do not need to be completely symmetrical," *Thornton*, 62 S.W.3d at 583, "[t]he key element is the similarity of the incidents. The similarity of the accident at issue and the previous incident must be sufficiently close to avoid undue prejudice and confusion." *Stokes*, 168 S.W.3d at 484.[12] Suffi-

---

11. The argument portion of Plaintiffs' brief also takes issue with Defendants' elicitation and use of evidence that no other instances of illness were reported by others who ate at Restaurant on the same day as Daughter. This argument was not preserved for review because it was not included in Plaintiffs' point on appeal. *See In re Marriage of Miller*, 939 S.W.2d 572, 573 (Mo.App. S.D.1997) ("[i]ssues to which appellant alludes only in argument are not presented for appellate review").

12. The *Stokes* court also cautioned that the trial court "should not interpret this decision to mean that it must allow [the plaintiff] to delve into all of the details of the prior inci-

cient similarity requires that the incidents "be (1) of like character, (2) occur under substantially the same circumstances, and (3) result from the same cause." *Thornton,* 62 S.W.3d at 583.

■ Defendants contend that the incidents were not sufficiently similar because "[t]here was no evidence that the illnesses were caused by the McDonald's hamburgers[.]" Even if we assume *arguendo* that Mr. Davison's equivocal testimony established that the ground beef for all four meals at issue came from the same supplier, Plaintiffs' offer of proof was devoid of any evidence that the illnesses in the other individuals were caused by that hamburger. Ms. McLaughlin said she was "told" that the cause of the illness she and her daughter had suffered was "E. coli." Plaintiffs' counsel did not elicit testimony from M.B.'s mother, but he told the trial court that she would say that her daughter ate a cheeseburger at the Marshfield restaurant on July 9th and "first exhibited symptoms by July 11th." Counsel asserted that M.B. was then flown from a local hospital "by LifeFlight helicopter to Children's Mercy hospital where she also developed E. coli infection and HUS." Absent from the offer of proof was any evidence that the E. coli bacteria in the other incidents resulted from hamburger served by the Marshfield restaurant.

In fact, the parties informed the trial court that the other incidents were the subject of ongoing lawsuits at the time of the instant trial. Plaintiffs acknowledge on appeal that their theory of causation in the other incidents is based upon circumstantial evidence, but cite language from Judge Lowenstein's dissenting opinion in *Peters v. General Motors Corp.,* 200 S.W.3d 1, 29 (Mo.App. W.D.2006) (quoting *Duke v. Gulf & Western Mfg. Co.,* 660 S.W.2d 404, 410 n. 3 (Mo.App. W.D.1983)), that " '[a]bsolute certainty of causation is not required in a product liability case[,]' " and in some cases circumstantial evidence may be "sufficient." [13] Plaintiffs' reply brief contends that Dr. Marsden "would certainly testify ... that a McDonald's hamburger had caused the E. coli 0157:H7 bacterial infection" in the other individuals, but their supporting citation to the record is to their argument to the trial court on Defendants' motion *in limine;* their subsequent offer of proof included no such testimony from Dr. Marsden.

The proffered evidence also did not demonstrate similarities between the strains of infection, the incubation periods involved, or the food preparation methods used by the Marshfield restaurant on the days in question so as to demonstrate that these incidents were actually of the same character and had occurred under the same circumstances as Daughter's illness. *See Thornton,* 62 S.W.3d at 583. Even if it is possible for a food to be contaminated by more than one pathogen and/or multiple strains of a pathogen, Plaintiffs acknowledge in their reply brief that the strains of E. coli 0157:H7 were different

dents involving [the defendant's] other products." 168 S.W.3d at 485. It cautioned that "[s]uch detail could be unduly prejudicial and cause confusion by becoming the proverbial 'sideshow taking over the circus.' " *Id.* Such a risk was present here; proving that the other individuals' illnesses were caused by the hamburger they had consumed at the Marshfield restaurant would arguably have equated to conducting two additional trials within the instant trial.

13. The majority in *Peters* found that the trial court abused its discretion in admitting certain evidence about incidents of sudden acceleration in other vehicle crashes where "the other incidents were not shown to have been caused by a defective cruise control [—the defect alleged by the plaintiff]," and the evidence was unduly prejudicial. 200 S.W.3d at 12.

between the families involved. Ms. McLaughlin testified that she and her daughter became ill "[a] couple of days" after eating at the Marshfield restaurant, and Plaintiffs' counsel argued that M.B. ate at the Marshfield restaurant and "then" became ill. Daughter began exhibiting symptoms within six to eight hours after she ate at Restaurant. All of the experts testified that six to eight hours would be an extremely short incubation period for E. coli. Plaintiffs' proffered evidence assumed incubation periods that were either significantly longer or were so vague that they could not be said to be substantially similar to the incubation period Plaintiffs argued for Daughter, assuming the infections at issue could be attributed to the Marshfield restaurant. The restaurants at issue were operated by different parties in different cities, the meals were consumed on different days, and there was no evidence proffered regarding the Marshfield restaurant's cooking methods on the dates at issue.

The trial court was not compelled to find from Plaintiffs' offer of proof that Daughter's illness and the illnesses of the other individuals were sufficiently similar and probative "so as to outweigh the concerns of undue prejudice and confusion of the issues." *Thornton,* 62 S.W.3d at 583. As a result, the trial court's decision to exclude the proffered evidence was not "so arbitrary and unreasonable as to shock one's sense of justice." *Eckerd,* 289 S.W.3d at 743. Plaintiffs' point is denied, and the judgment is affirmed.

JEFFREY W. BATES and WILLIAM W. FRANCIS, JR., JJ., CONCUR.