Stephanie **PITTMAN**, Appellant,

v.

**RIPLEY COUNTY MEMORIAL HOSPITAL**, Respondent.

No. SD 29640.

Missouri Court of Appeals,
Southern District,
Division Two.

July 26, 2010.

Motion for Rehearing or Transfer to Supreme Court Denied Aug. 17, 2010.

Application for Transfer Denied Sept. 21, 2010.

Jasper N. Edmundson, Jr., Edmundson, Edmundson & Innes, Poplar Bluff, Kirk D. Holman, Amy P. Maloney, Holman Schivone, LLC, Kansas City, for Appellant.

James E. Spain, Kristi J. Booker, Spain, Miller & Spain, LLC, Poplar Bluff, for Respondent.

PAUL McGHEE, Senior Judge.

Appellant sued respondent, her former employer, alleging that she had been denied promotion to the position of emergency room supervisor at the hospital in retaliation for her complaint that she had been sexually harassed by a physician working for the hospital. She bases her retaliation claim on § 213.070.[1] The case was tried to a jury, which found in favor of the hospital. The trial court entered judgment for the hospital, and appellant appeals. We affirm.

On November 24, 2004, appellant was working as a registered nurse in the hospital emergency room where a contract physician also worked. On that day, she found a floppy disk that the physician had taped to her office desk. Not knowing who put the disk there, or what it contained, she later viewed it with a co-worker, and they saw sexually explicit images of the physician and a female. The two coworkers immediately informed the emergency room medical director and the director of nursing of the contents of the disk. The hospital administrator called appellant to his office a few days later where they discussed the disk. As a result of the conference, the hospital adjusted her work schedule so that she would work with another physician.

The emergency room supervisor later left her employment at the hospital, and appellant and another nurse applied for the position. The director of nursing and the administrator interviewed both appli-cants, and in August 2005 they selected the other nurse to fill the position. Appellant continued to work in the emergency room until she resigned in March 2006.

Appellant presented evidence at trial that she was not selected as the emergency room supervisor because of her complaint against the physician, including testimony that the director of nursing later told her, in effect, that she had not been selected because of her complaint. The director of nursing denied that she had told her that, and both she and the hospital administrator denied in their testimony that they had considered the complaint in making their selection. Respondent did not dispute that the physician furnished a sexually explicit disk to appellant and that she filed a complaint of sexual harassment. The controverted liability issue submitted to the jury was whether appellant's complaint of sexual harassment by the physician was a contributing factor in respondent's decision not to promote her to the position of emergency room supervisor. The jury resolved the conflicting evidence against her.

In her first point, appellant asserts that the trial court abused its discretion in excluding evidence of sexual harassment by the physician as the evidence was relevant to the core issues of her action for retaliation. The disk contained 27 sexually explicit images, including photographs of the physician and a female engaging in oral sex, and a female shaving her pubic area and showering naked. The trial court did not permit appellant to show the images on the disk to the jury, but permitted her and other witnesses to testify generally about the disk. In addition, appellant at-

---

1. RSMo 2000, of the Missouri Human Rights Act (MHRA). The statute provides, *inter alia,* that it is an unlawful discriminatory practice to retaliate or discriminate in any manner against any person who has filed a com-plaint, testified, assisted, or participated in any manner in any investigation, proceeding or hearing conducted pursuant to the MHRA. (Statutory citations are to RSMo 2000 unless otherwise noted.)

tempted to introduce evidence that the physician subsequently asked a female employee to go "parking," which she took as an invitation to have sex; that he later made vulgar sexual comments to another employee; and that he had performed inappropriate examinations of breasts of female patients. There is no indication that these comments, or the examinations, were made in the presence of appellant. The trial court excluded this evidence. The issues raised by this point are whether the excluded evidence was admissible as being both logically and legally relevant; and, if admissible, whether the trial court abused its discretion in excluding the evidence.

Respondent argues that the evidence was not logically relevant because appellant's claim was not for sexual harassment, but was a claim of retaliatory failure to promote her because she complained to management about the harassment. Respondent also contends that the evidence was not legally relevant as it would have created a substantial likelihood that the jury would have been misled or confused by the "graphic nature" of the photographs.

Appellant principally relies on federal case law in support of her contention that the excluded evidence should have been admitted, as does respondent in support of its position. Our Supreme Court has directed that in deciding a case under the MHRA, appellate courts are guided by both Missouri law and federal employment discrimination law consistent with Missouri law. *Willard v. Raga*, 290 S.W.3d 768, 772 (Mo.App.2009) (citing *Daugherty v. City of Maryland Heights*, 231 S.W.3d 814, 818 (Mo. banc 2007)).

▆ Although this court gives respectful consideration to the federal cases cited by the parties, "[w]e are not bound by general declarations of law made by lower federal courts." *Kraus v. Board of Education of City of Jennings*, 492 S.W.2d 783, 784 (Mo.1973); *Hanch v. K.F.C. Nat'l. Management Corp.*, 615 S.W.2d 28, 33 (Mo. banc 1981). *See also Morris v. Karl Bissinger, Inc.*, 272 S.W.3d 441, 443 (Mo.App. 2008). "[W]hile federal interpretations of similar procedural rules can provide us illustrative and useful guidance; they are not controlling, even if the federal rule is nearly identical to Missouri's." *Richter v. Union Pacific R. Co.*, 265 S.W.3d 294, 299 (Mo.App.2008).

▆ "Generally, the law of the forum governs the admissibility of evidence." *State v. Simon*, 680 S.W.2d 346, 352 (Mo. App.1984). Matters of procedure are governed by the law of the forum, and what is substantive and what is procedural is for the court of the forum to decide. *Miller v. Haynes*, 454 S.W.2d 293, 298 (Mo.App. 1970).[2] Admissibility of evidence is a procedural matter governed by the law of Missouri; we resolve the issues raised by appellant as to admissibility of evidence under settled Missouri law. *See Keith v. Burlington Northern R. Co.*, 889 S.W.2d 911, 920 (Mo.App.1994).

Fundamental to the Missouri law of evidence is the rule that evidence must be both logically and legally relevant in order to be admissible. Evidence is inadmissible if it fails to satisfy either prong of this bifurcated relevancy standard.

Evidence is logically relevant if it tends to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence, or if it tends to corroborate

---

**2.** This case has been overruled on an unrelated point of law. *See Payne v. Cornhusker Motor Lines, Inc.*, 177 S.W.3d 820, 831 n. 3 (Mo.App.2005).

evidence which itself is relevant and bears on the principal issue of the case.

Legal relevance, on the other hand, requires the balancing of the probative value of the proffered evidence against its prejudicial effect on the jury. Stated another way, legal relevance is determined by weighing the probative value of the evidence against its costs, including unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or cumulativeness. Thus, logically relevant evidence is excluded if its costs outweigh its benefits. Ultimately, the determination of whether evidence is legally relevant rests within the sound discretion of the trial court. Consequently, if evidence is erroneously admitted or excluded, we will reverse only if the error results in substantial and obvious injustice. (Internal citations and quotation marks omitted). *Shelton v. City of Springfield,* 130 S.W.3d 30, 37 (Mo.App.2004). *See also Eckerd v. Country Mut. Ins. Co.,* 289 S.W.3d 738, 743 (Mo.App.2009).

Trial courts have broad discretion over the admissibility of evidence and appellate courts will not interfere with their decisions unless there is a clear showing of abuse of discretion. *Hancock v. Shook,* 100 S.W.3d 786, 795 (Mo. banc 2003). " 'The trial court is in the best position to evaluate whether the potential prejudice of relevant evidence outweighs the relevance. [It] is vested with broad discretion in ruling questions of relevancy of evidence and, absent a clear showing of abuse of that discretion, the appellate court should not interfere with the trial court's ruling.' " *Giles v. Riverside Transport, Inc.,* 266 S.W.3d 290, 295 (Mo.App. 2008) (quoting *State v. Hawkins,* 778 S.W.2d 780, 782–83 (Mo.App.1989)). A trial court abuses its discretion when its ruling is clearly against the logic of the cir-

cumstances then before the court, and it is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration. *Hancock v. Shook, supra.*

The basis of the trial court ruling excluding the evidence as not being logically relevant was that appellant's claim was for retaliatory failure to promote her, not for the conceded act of sexual harassment. The evidence was excluded as not being legally relevant because it tended to unfairly prejudice respondent and confuse the issues presented to the jury. The ruling of the trial court was within its sound discretion; it was not clearly against the logic of the circumstances; and it was not so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration. The record shows that the trial court carefully considered the admissibility issue, and it did not err in excluding the evidence. Point I is denied.

Appellant contends in Point II that the trial court abused its discretion in admitting evidence of financial data of the hospital that was hearsay and lacked proper foundation. Appellant asked for actual and punitive damages in her prayer for relief, and § 213.111.2 permits recovery of both actual and punitive damages in claims brought under the MHRA. *Alhalabi v. Mo. Dept. of Natural Resources,* 300 S.W.3d 518, 528 (Mo.App.2009). Appellant would have been entitled to punitive damages had she established respondent's liability for actual damages and then proved by clear and convincing evidence that respondent's conduct was outrageous because of its evil motive or reckless indifference to appellant's rights. *Gilliland v. Missouri Athletic Club,* 273 S.W.3d 516, 520 (Mo. banc 2009).

Section 510.263 [3] authorizes a bifurcated trial in an action tried before a jury including punitive damages if requested by any party. Respondent filed a request for a bifurcated trial, but later withdrew the request. Appellant made no such request, and the case was tried in a single stage in which the parties presented their evidence on the financial condition of respondent, and the court instructed the jury on punitive damages with the other instructions. As the jury found for respondent on the liability issue, it did not reach the issue of damages.

Appellant attempted to prove the financial status and net worth of respondent by introducing into evidence a state audit of Ripley County which showed that at the end of calendar years 2005 and 2006, Ripley County had a surplus of more than $1,000,000. Respondent established that the same audit also showed the hospital owed the Internal Revenue Service more than $2,000,000. This evidence came in without objection by either party.

Respondent called its chief financial officer to testify as to its financial condition as revealed in an audit of the hospital made by a firm retained by it. She testified, over the objection of appellant, that the audit showed for the three previous years the hospital had operated at a loss, and that the liabilities of the hospital exceeded its assets by approximately $625,000. The audit set the amount of the indebtedness to the Internal Revenue Service at approximately $2,400,000. The witness testified that the audit was required by the state, and the auditors came to the hospital and obtained from her the documents they used to prepare the audit.

Appellant argues that the audit report was hearsay because no representative of the accounting firm testified to lay a proper foundation or otherwise authenticate the audit. She further argues that the evidence was inadmissible because of lack of compliance with § 490.680. That section provides that a record of an act, condition or event, if relevant, shall be competent evidence if the custodian or other qualified witness testifies to the identity and mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.

Respondent contends that as the jury did not assess actual damages, it could not assess punitive damages against it, citing *The Williams Carver Co. v. Poos Brothers, Inc.*, 778 S.W.2d 684 (Mo.App.1989). In that case, the plaintiff sued the defendant in quantum meruit, and the defendant filed a counterclaim alleging fraudulent misrepresentation and seeking punitive damages. The trial court refused to submit the punitive damages issue to the jury. The jury found in favor of the plaintiff on its quantum meruit claim and against the defendant on its counterclaim. The defendant raised as error on appeal the refusal to submit the issue to the jury. The court held that the defendant was not prejudiced by the refusal to submit the punitive damages issue as actual damages must be awarded before punitive damages may be awarded. *Id.* at 686.

A punitive damage claim must be brought in conjunction with a claim for actual damages, and a plaintiff must prevail on her underlying claim before she can recover punitive damages. *Kelly v. State Farm Mut. Auto. Ins. Co.*, 218 S.W.3d 517, 526 (Mo.App.2007) (citing *Misischia v. St. John's Mercy Med. Ctr.*, 30 S.W.3d 848,

866 (Mo.App.2000)). In the absence of an award of actual or compensatory damages, appellant could not recover punitive damages. *Agnello v. Walker*, 306 S.W.3d 666, 678 (Mo.App.2010). As appellant could not recover punitive damages, we need not determine whether the trial court erred in admitting the evidence of respondent's financial condition that its chief financial officer gleaned from the audit of the hospital. However, a review of the issue of the admissibility of the evidence on the merits discloses neither error nor prejudice. Point II is denied.

■ Appellant claims in Point III that the trial court abused its discretion in admitting evidence of her character and job performance as that evidence was irrelevant and immaterial and materially prejudiced the jury against her. The specific evidence which she mentions in her brief is "alleged failings in interpersonal skills, being 'burned out' from a previous position, and having problems with attendance." She says that discovery and trial evidence established that her previous job performance was not a consideration by the director of nursing and the hospital administrator in deciding not to promote her.

■ The character of a party is generally irrelevant in a civil action and cannot be inquired into if not put in issue by the nature of the proceeding. *Ackerman v. Watson*, 690 S.W.2d 498, 499 (Mo.App. 1985); *Williams v. McCoy*, 854 S.W.2d 545, 557–58 (Mo.App.1993). An exception to the rule is that a party may impeach or contradict a party on matters brought out on direct examination. *Id.* at 558.

The court finds no attacks on appellant's character, but both parties presented evidence about her previous job performance. On direct examination, appellant testified as to her training to become a registered nurse in 2001, and that she commenced working in the hospital emergency room as a registered nurse in May 2001. She resigned in May 2003 for "personal reasons." She then went to work for the Butler County Health Department, and worked there until she returned to the hospital at the invitation of the director of nursing. After the emergency room supervisor left the hospital, she became the interim supervisor and had no problems, things went smoothly, and there were no complaints about her.

She testified at length as to her certifications and skills which enabled her to perform her duties as an emergency room nurse, and that after she was not selected, the director of nursing told her that she was an excellent nurse and there was nothing wrong with her clinical skills. She testified that after she did not receive the promotion, the director of nursing began to treat her differently in that she started getting "write-ups," and the director's demeanor changed and she would yell, holler and scream at her.

On cross-examination, she admitted having attendance and tardiness problems before she resigned in 2003; that she had referred to other employees as "brownnosers" and "crybabies"; and that she had stated the director of nursing should be fired. During the cross-examination, she testified, "I thought I did my job great," and that she thought she was a better emergency room nurse than the other applicant.

Appellant presented evidence to show that she was an excellent nurse and better qualified than the selected applicant; that she was denied promotion only because of her complaint about the act of sexual harassment by the physician. Respondent could properly impeach her testimony about her qualifications and job performance, and could present evidence to contradict her testimony that she was the better

qualified applicant whose failure to be selected was in retaliation for her complaint. The evidence as to appellant's job performance was both logically and legally relevant to rebut the evidence presented by her. The trial court did not err in admitting the evidence. Point III is denied.

For her final point, appellant claims that the trial court erred in denying her a new trial because the cumulative effect of erroneous evidentiary rulings deprived her of a fair trial in that irrelevant and immaterial evidence which was highly prejudicial to her was placed before the jury, while relevant and highly probative evidence was withheld from the jury's consideration.

██ "It is true a new trial can be ordered due to cumulative error, even without deciding whether any single point would constitute grounds for reversal." *DeLaporte v. Robey Bldg. Supply, Inc.*, 812 S.W.2d 526, 536 (Mo.App.1991). *See also Koontz v. Ferber*, 870 S.W.2d 885, 894 (Mo.App.1993). However, the court will not grant relief to a party due to cumulative error when there is no showing that prejudice resulted from any rulings of the trial court. *Smith v. Wal–Mart Stores, Inc.*, 967 S.W.2d 198, 205 (Mo.App.1998). As we find no trial court errors and no prejudice to her from the rulings of the trial court, appellant is not entitled to relief on her claim that the trial court erred in denying a new trial on the basis of cumulative errors. Point IV is denied.

██ " 'The jury is the sole judge of the credibility of witnesses and the weight and value of their testimony and may believe or disbelieve any portion of that testimony.' " *Keveney v. Missouri Military Academy*, 304 S.W.3d 98, 105 (Mo. banc 2010) (quoting *Altenhofen v. Fabricor, Inc.*, 81 S.W.3d 578, 584 (Mo.App.2002)). The jury resolved in favor of respondent the factual dispute of whether appellant's complaint was a contributing factor in the decision not to promote her. Appellant did not establish that she did not receive a fair trial, and we see no substantial and obvious injustice. The trial court did not err in denying her a new trial. The judgment is affirmed.

SCOTT, C.J., and RAHMEYER, J., concur.