NOT DESIGNATED FOR PUBLICATION

No. 117,515

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

MARIO PEREZ,
*Appellant*,

v.

LORRAINE RAMOS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Finney District Court; WENDEL W. WURST, judge. Opinion filed October 26, 2018. Affirmed.

*Melinda G. Young*, of Bretz & Young, L.L.C., of Hutchinson, for appellant.

*Ashlyn B. Lindskog*, *Stanford J. Smith*, and *Samantha M.H. Woods*, of Martin, Pringle, Oliver, Wallace & Bauer, L.L.P., of Wichita, for appellee.

Before HILL, P.J., PIERRON and POWELL, JJ.

PER CURIAM:  Lorraine Ramos rear-ended Mario Perez while both vehicles were stopped at a red light. Prior to trial, Ramos indicated in her motions in limine that she was at fault for the accident, and the morning of trial, Ramos formally admitted 100% fault for the accident. Accordingly, the district court limited the issue at trial to damages from the collision, including the nature and extent of those damages and whether Ramos' admitted negligence caused the damages Perez alleged. The jury returned an award of damages in favor of Perez covering his medical expenses from the collision and an award for noneconomic damages. Perez both orally requested and filed motions for a new trial.

The district court denied these motions, and Perez now appeals. After a careful review of the record on appeal, we affirm the district court.

FACTUAL AND PROCEDURAL BACKGROUND

On August 22, 2013, Perez was sitting at a stoplight in Garden City, when Ramos came to a stop behind him. Ramos had her foot on the brake and was looking down at something in her vehicle. There was a left-turn lane next to Ramos and Perez and when the signal turned green for the turn lane, the cars in that lane began to proceed through the intersection. At that point, Ramos took her foot off her brake and began to move forward, which caused her to hit the back of Perez' vehicle. After the accident, the investigating officer reviewed surveillance footage and concluded that Ramos instinctively thought her light had turned green, causing her to take her foot of the brake. It appears the only damages to the vehicles were a cracked license plate frame on one vehicle and a small bend and scuffs on the other vehicle's bumper. Although not entirely clear because the entire trial transcript is not included in the record on appeal, it appears Perez suffered a neck injury from this accident and later had neck surgery, although he already had degenerative neck issues prior to the accident.

On February 13, 2015, Perez sued Ramos for negligence, seeking damages for his past and future medical bills resulting from the accident and noneconomic damages for pain, suffering, disability, and loss of enjoyment of life. Specifically, he sought $34,562.44 for medical expenses to date; $25,000 for future medical expenses; and whatever a jury determined to be fair not to exceed the statutory maximum for noneconomic damages.

During pretrial, Ramos appeared to contest at points that she was at fault. During her deposition she stated that at one time it was her position that Perez backed his vehicle into hers at the light, and in the final pretrial order Ramos asserted that Perez was

2

contributorily negligent in causing the collision. However, on September 22, 2016, Ramos filed motions in limine that acknowledged liability was not at issue in the case. In Ramos' second motion in limine, Ramos stated that she "has admitted liability, so the jury only needs to determine causation and damages." On September 28, 2016, the first day of trial, Ramos formally agreed and stipulated that she was 100% at fault in the matter. The district court allowed Ramos to stipulate to liability, but it also allowed Perez to present evidence as to the facts and mechanics of the accident.

Other evidentiary issues were addressed in Ramos' second motion in limine. In that motion, she requested Perez be prohibited from eliciting any testimony or making any argument relating to the golden rule theory, the reptile theory, and any other argument on the basis of general safety. At the hearing on the motion, Ramos' counsel argued that because Ramos had stipulated to liability, any evidence and argument on the questions of safety and duty were irrelevant. Ramos' counsel argued that the law was clear that any golden rule theory argument was impermissible with respect to damages. Perez informed the district court that he wanted to present evidence of Ramos' wrongdoing and insisted that he should be able to tell the jury that it was the conscience of the community and that it was making a decision on behalf of the community.

The district court asked Perez what authority existed for the proposition that it was proper for the jury to consider whether it was okay for a person in the community to rear end people and not to pay attention when the issue of liability had already been resolved. The district court also inquired if Perez was asking for punitive damages. Perez did not provide the district court with any authority that would allow him to present his desired arguments when liability was not at issue, and he told the district court that he was not asking for punitive damages.

The district court explained to Perez that he could put on evidence as to the accident that affected his damages claim and have the Plaintiff testify as to the impact

3

upon him. The district court held that beyond those facts, liability was not an issue in the case and there was no relevance of references to Ramos' duty or breach of that duty because those issues were clearly decided through the stipulation to fault.

Perez also indicated that he wanted to be able to present evidence that Ramos was not paying attention and that the reason drivers are supposed to pay attention is because it is dangerous to drive a vehicle and not pay attention, that every driver has a responsibility to drive safely, and that it is unsafe to drive while distracted. The district court ruled that no evidence of that nature was admissible. Instead, the district court stated that Perez could elicit testimony about the mechanics of the accident as it affected his injuries, but because liability was stipulated to, there was no relevance or materiality in a line of questioning relating to the fact that it was dangerous to violate the law. Further, the district court stated that such arguments inflame a jury to award damages based on improper considerations. The district court also refused to allow Perez to introduce evidence that liability was ever an issue in the pleadings because it was no longer an issue for trial. Specifically, Perez was precluded from introducing Ramos' denials of fault in her pleadings, interrogatory answers, and deposition testimony. Both parties were ordered to refrain from raising liability as an issue.

Later, during voir dire, the district court apparently prohibited Perez from asking prospective jurors whether they were comfortable rendering a judgment on behalf of the community. However, a transcript of voir dire does not appear in the record on appeal. During Ramos' opening statement, she admitted that the accident was her fault. During trial, Ramos elicited testimony from the investigating officer that she did not receive a citation for her role in causing the accident. Perez' counsel did not object, but the district judge nonetheless admonished Ramos' counsel for the question and sua sponte elected to give a curative instruction to the jury.

4

The jury awarded Perez economic damages in the amount equal to the cost of medical treatment he obtained on the day of the accident—$2,945.40. The jury also awarded this same amount to Perez in noneconomic damages, resulting in a total jury award of $5,890.80. Perez moved for a new trial, both orally after the jury's verdict and via a written motion, and the district court appears to have denied both of these motions.

Perez timely appeals.

On appeal, Perez makes one overarching argument: The district court erred in denying his motions for a new trial. Perez raises three separate grounds in which he argues each one independently should have warranted him a new trial: (1) The district court erred in allowing Ramos to stipulate that she was 100% at fault for the collision; (2) the district court abused its discretion by prohibiting Perez from presenting proof of Ramos' negligence at trial; and (3) the district court abused its discretion by limiting Perez' inquiries during voir dire to issues regarding damages.

Our standard of review for all of Perez' claims on appeal is the same. It is within the sound discretion of the trial court to grant or deny a new trial under K.S.A. 2017 Supp. 60-259(a), and a ruling on a motion for new trial will not be disturbed on appeal except upon a showing of an abuse of discretion. *Miller v. Johnson*, 295 Kan. 636, 684, 289 P.3d 1098 (2012). A judicial action constitutes an abuse of discretion if no reasonable person would take the view adopted by the court, or the court's action was based upon an error of law or fact. *Wiles v. American Family Life Assurance Co.*, 302 Kan. 66, 74, 350 P.3d 1071 (2015).

With this standard of review in mind, each of Perez' arguments will now be addressed in turn.

I. DID THE DISTRICT COURT ERR IN ALLOWING RAMOS TO STIPULATE THAT SHE WAS AT FAULT FOR THE COLLISION?

First, Perez argues that the district court abused its discretion in denying his motions for a new trial because it erred in allowing Ramos to stipulate on the day of trial that she was 100% at fault for the collision. He argues that he should not have been required to accept Ramos' admission and, instead, should have been permitted to present any and all evidence relevant to the elements compromising his prima facie case. Ramos argues in response that both parties and the district court knew that Ramos' fault was not at issue in the case and that the entry of the formal stipulation on the morning of trial was just a formality that was not a surprise to either party or the district court.

It is well established that in a negligence case, the plaintiff has the burden to prove: "(1) The defendant owed a duty to the plaintiff; (2) the duty was breached; (3) the breach was the proximate cause of the plaintiff's injury; and (4) the plaintiff sustained damages." *Adams v. Board of Sedgwick County Comm'rs*, 289 Kan. 577, 585-86, 214 P.3d 1173 (2009). Under Ramos' stipulation to full liability, Perez was relieved of his burden to prove the first two requirements and only needed to prove the damages Perez incurred and that those damages were due to Ramos' negligence.

Perez makes four arguments that the district court's allowance of Ramos' stipulation entitle him to a new trial: (1) Ramos' stipulation should have been denied entirely as untimely; (2) Perez was not required to accept Ramos' stipulation and should have been permitted to present any and all evidence relevant to Ramos' negligence; (3) Ramos should not have been permitted to amend the final pretrial order by belatedly admitting fault without first demonstrating that she would suffer manifest injustice if the requested amendment was not allowed by the district court; and (4) Ramos' counsel made impermissible comments regarding Ramos' fault and her acknowledgement of her fault in causing the collision.

6

A.      *Should Ramos' stipulation have been denied as untimely?*

Perez asserts that he suffered unfair prejudice and harmful surprise because he was required to completely alter his trial strategy as a result of the stipulation. In reality, both parties had recognized that liability was not at issue in this case prior to trial. In Ramos' second motion in limine filed on September 22, 2016, she specifically states: "[D]efendant has admitted liability." At the hearing on this motion held September 28, 2016, the district court stated, "In the pretrial conference order it appeared that comparative fault was an issue, and in later pleadings it appears that the defendant is intending to admit liability. I understand that plaintiff has some objection to that." Unfortunately, the record on appeal is very scarce and does not contain transcripts of those prior pretrial proceedings. However, based on the district court's statements, it is obvious that Perez had notice that Ramos would stipulate to liability. Moreover, in his brief, Perez states Ramos "had undoubtedly recognized her responsibility for the collision ever since it actually occurred nearly two years before."

Further, a review of the record does not indicate exactly how Perez was prejudiced by Ramos' stipulation. He was still permitted to present evidence regarding the mechanics of the accident, the surveillance footage of the accident, the nature and extent of Perez' damages, and whether or not Ramos' admitted negligence caused the damages Perez alleged.

In support of his argument, Perez cites to the Missouri Court of Appeals case of *Cogdill v. Flanagan*, 410 S.W.3d 714 (Mo. Ct. App. 2013). In that case the defendant was driving while intoxicated and decided to admit liability for the accident shortly before trial in an apparent attempt "designed solely to exclude evidence of [the defendant's] intoxication." 410 S.W.3d at 724. The *Cogdill* court held that the plaintiffs were prejudiced by the timing of the stipulation because they had witnesses and exhibits

7

prepared relating to the defendant's intoxication and exclusion of the evidence of the defendant's intoxication. 410 S.W.3d at 724.

However, Perez' reliance on *Cogdill* is misplaced for two reasons. First, Missouri has a longstanding rule in which "'[a] party is not required to accept a judicial admission of his adversary, but may insist on proving the fact.'" *Ruppel v. Clayes*, 230 Mo. App. 699, 72 S.W.2d 833, 835 (1934). We are unaware of a similar rule in Kansas and, as we discuss in more detail below, Perez supplies us with no valid Kansas authority establishing such a rule. Second, in *Cogdill*, the defendant did not explicitly admit that he was negligent or that the accident was his fault—there was no unequivocal admission of liability. The *Cogdill* court stated that "[t]here may be circumstances when an unequivocal and full admission of liability may leave only the issue of damages for a jury, but such admission must be clear." 410 S.W.3d at 724.

Here, Ramos unequivocally stipulated that she was 100% at fault. There is simply no indication how exactly Perez was prejudiced by Ramos' stipulation.

B.      *Should Perez have been permitted to present any and all evidence relevant to Ramos' negligence?*

Next, Perez argues that he was not required to accept Ramos' admission of fault and should have been permitted to present any and all evidence relevant to Ramos' negligent conduct.

It is well established that "[o]n an appeal, the burden is on the party alleging error to show it." See, e.g., *Quivira, Inc. v. Quivira Co., Inc.*, 173 Kan. 339, Syl. ¶ 2, 245 P.2d 972 (1952).

8

In his brief Perez states: "It has long been held by Kansas courts that '[a] party is not required to accept a judicial admission of his adversary, but may insist of proving the fact'", citing *State v. Wilson*, 215 Kan. 28, 32, 523 P.2d 337 (1974); *State v. Farris*, 218 Kan. 136, 542 P.2d 725 (1975); and *State v. Johnson*, 216 Kan. 445, 532 P.2d 1325 (1975). However, reliance on these cases is misplaced as all three were overturned by *State v. Lee*, 266 Kan. 804, 814-16, 977 P.2d 263 (1999), on the very point for which Perez utilizes them. The *Lee* court's holding is clear: "When requested by a defendant, the trial court must approve a stipulation whereby the parties acknowledge that the defendant is, without further elaboration, a prior convicted felon." 266 Kan. 804, Syl. ¶ 4.

In a footnote in his brief, Perez quotes portions of *Lee* in an attempt to argue that the holding in *Lee* does not change the proposition in *Wilson* that a party may insist on proving a fact at trial. Yet those quotes are taken out of context. The first quote in Perez' brief reads: "The Court made clear that a party has an 'interest in presenting [her] case in [her] own way by telling the story as [she] wishes." The opinion reads:

> "We acknowledge that the State has the right and, in fact the duty, to establish the elements of the crime charged. The State also has an interest in presenting its case in its own way by telling the story as the State wishes. But, Lee should be judged only on the crimes charged and, as *Brown* observed, 'not being convicted on an improper ground due to the admission of evidence that carries unfairly prejudicial baggage.' 719 So. 2d at 887." *Lee*, 266 Kan. at 815.

The second quote in Perez' brief reads: "It stated further that its holding 'should not be read as limiting [a party] in presenting a full in-depth story' of her case." The quote from the opinion reads: "Our views should not be read as limiting the State in presenting a full in-depth story of a prior crime when the prior crime has relevance independent of merely proving prior felony status for K.S.A. 21-4204(a)(4)." 266 Kan. at 816. *Lee* does not stand for the proposition that Perez argues.

9

Perez also relies on *State v. Arnold*, No. 111,520, 2015 WL 5613082 (Kan. App. 2015) (unpublished opinion). In *Arnold*, again a criminal case, the defendant was willing to stipulate to the content of videos containing child pornography, arguing that any probative value of the videos was outweighed by their prejudicial effect. However, Arnold failed to provide a proffer of a proposed written stipulation, which hindered the panel's full review of the issue. 2016 WL 5613082, at *5. The *Arnold* panel held: "As a general rule, the State is entitled to use the full weight of its evidence to establish the elements of the crime for which the defendant is charged. A narrow exception exists when the defendant is charged with a crime and the government must establish the defendant's prior conviction as an element of the offense." 2015 WL 5613082, at *6. The panel acknowledged that "there are numerous cases where courts have refused to require the government to accept a defendant's stipulations to the content of photographs, videos, or other articles in order to avoid jurors from seeing the actual pornography at issue." 2015 WL 5613082, at *7. The panel ultimately held:

> "Here, the videos introduced into evidence at Arnold's trial were central to the State's case. The videos were probative to establish that Arnold was promoting child pornography and also to prove his intent. The State was entitled to use the full weight of its evidence to establish the elements of the crimes for which Arnold was charged, and Arnold was not entitled to pick and choose what evidence the jury would hear. The fact that the State only showed brief portions of each video undercuts Arnold's argument that the evidence was unduly prejudicial." 2015 WL 5613082, at *7.

*Arnold* is completely different from the case at hand. Again, confined to the criminal context, that case dealt with evidence of pornographic videos depicting children, and the State used those videos to prove Arnold's intent to collect such items, none of which is applicable to the case at hand. In this case, Perez alleged that Ramos was at fault from an auto accident, and Ramos agreed that she was fully responsible.

10

Perez next states in his brief that "a civil defendant must not be permitted to control the presentation of the plaintiff's proof by offering to stipulate. As this Court and the Supreme Court of Kansas have recognized, the party responsible for proving his prima facie case must not be required to accomplish that task on the defendant's terms." However, Perez cites *no* authority for these assertions. "Simply pressing a point without pertinent authority, or without showing why it is sound despite a lack of supporting authority, is akin to failing to brief an issue. 'Where the appellant fails to brief an issue, that issue is waived or abandoned. [Citation omitted.]'" *McCain Foods USA, Inc. v. Central Processors, Inc*., 275 Kan. 1, 15, 61 P.3d 68 (2002).

Next, Perez cites *United States v. Davis*, 792 F.2d 1299 (5th Cir. 1986), in support of his argument that the district court erred in permitting Ramos to stipulate to fault, which warranted the granting of his motions for a new trial. In that case the evidence at issue was relevant to elements beyond the stipulation. The defendant was charged with possession of firearms in interstate commerce. The *Davis* court held that the interstate commerce evidence was not only relevant to the interstate commerce elements, but also to when the possession occurred and other elements of the crime. 792 F.2d at 1305-06. Here, the evidence that Perez wanted to introduce was related to Ramos' duty that she owed to Perez and her breach of that duty. Neither of these issues was relevant to the issue of damages. Perez was still able to present evidence that Ramos was the proximate cause of his injuries and show the surveillance footage of the accident. *Davis* is simply not persuasive here.

Finally, Perez quotes at length *Old Chief v. United States*, 519 U.S. 172, 117 S. Ct. 644, 136 L. Ed. 2d 574 (1997). In *Old Chief*, the United States Supreme Court held that a defendant charged with being a felon in possession of a firearm could stipulate that he had a prior felony conviction to prevent the prosecution from introducing evidence about the nature of his past crime. The Court reasoned that the defendant's prior conviction was "wholly independently of the concrete events of later criminal behavior charged against

11

him" and excluding evidentiary details of that past crime "would not deprive the prosecution of evidence with multiple utility." 519 U.S. at 190.

Again, *Old Chief* is confined to the criminal context and is not applicable to the case at hand. Here, Ramos' stipulation only served to relieve Perez of having to prove fault.

> "A stipulation has also been defined as an agreement, admission or concession made in judicial proceedings by the parties thereto or their attorneys. . . . [C]ourts are warranted in relieving parties from stipulations which have been improvidently or mistakenly made and . . . considerable discretion is vested in the trial court as to whether the relief shall be granted, depending largely, of course, on the facts and circumstances of the case." *Bodle v. Balch*, 185 Kan. 711, 714, 347 P.2d 378 (1959).

Perez alleged that Ramos was negligent, and Ramos conceded this fact. Perez has made no allegation of mistake.

Importantly, as discussed previously, the stipulation did not deter Perez from telling his story. It appears none of the witnesses Perez listed in the pretrial order were prohibited from testifying as a result of this stipulation. As best as a review of the limited record on appeal will allow us to conclude, the jury heard from the same witnesses and saw the evidence relating to Ramos bumping into Perez' vehicle at the red light. For example, the jury heard from both Perez and Ramos regarding the accident and heard from the officer who investigated the accident. Additionally, the jury watched the surveillance video that showed the accident.

Given these facts and Perez' lack of supporting authority, it was not an abuse of discretion for the trial court to deny Perez' motions for a new trial on this basis.

C.      *Should Ramos have been permitted to amend the final pretrial order by stipulating to her negligence?*

Third, Perez argues that the district court erred in denying his motions for a new trial because it improperly allowed Ramos to stipulate to fault, which equated to an amendment of the pretrial order. Specifically, he argues that such an amendment without requiring Ramos to prove manifest injustice was improper and warrants a new trial.

In the pretrial order, the Defendant's Contentions and Theories of Defense stated:

> "Defendant Lorraine Ramos states that the fault of plaintiff should be compared. The actions of negligence attributable to the plaintiff include, but are not limited to: failure to keep a proper lookout to the rear; failure to give full time and attention; failure to mitigate his damages; and failure to take the proper evasive maneuvers to avoid an accident."

The order also identified the issues of fact to be determined by the jury, including "Whether Defendant was negligent in rear-ending Plaintiff," and "What is the comparative fault of the parties."

K.S.A. 2017 Supp. 60-216(e) states:  "The [district] court may modify the order issued after a final pretrial conference only to prevent manifest injustice." In *Bussman v. Safeco Ins. Co. of America*, 298 Kan. 700, 708, 317 P.3d 70 (2014), the Kansas Supreme Court held that purpose of the pretrial order was:

> "'to eliminate the element of surprise from trials and to simplify the issues and procedure by full disclosure to all parties of the anticipated evidence and factual and legal issues and to consider "[s]uch other matters as may aid in the disposition of the action." K.S.A. 2001 Supp. 60-216(c)(7).' Generally, a trial court should not entertain an issue or claim

13

that is omitted from the pretrial order. Rather, the pretrial order controls the course of the action unless modified to prevent manifest injustice. [Citations omitted.]"

But here, there was no addition to the pretrial order. Any issues of fact related to liability that were raised in the pretrial order were not amended or modified—the admission only served to answer the questions for trial in the affirmative in favor of Perez. Perez claimed that Ramos was at fault, and Ramos agreed. Additionally, as previously discussed, the district court indicated that it was apparent after the pretrial conference that Ramos was intending to admit fault. Ramos' admission was not the last minute surprise evidence that pretrial orders serve to eliminate. Further, Perez does not show precisely how he was prejudiced by not having to prove Ramos was at fault. He simply argues that he was prevented from presenting evidence to prove his claim of negligence. Yet he has provided no legal support as to how precisely this prejudiced him when the jury was still able to hear the details regarding the accident and see the surveillance footage that captured the accident.

Perez fails to maintain his burden as the party asserting error on appeal, and the district court did not err in denying Perez' motions for a new trial on this ground.

D.      *Did Ramos' counsel make impermissible comments regarding Ramos' fault at trial?*

Finally, Perez argues that Ramos' counsel made impermissible comments regarding Ramos' fault and that because of those comments he was unfairly prejudiced. Specifically, Perez complains that Ramos' counsel asked the investigating officer whether Ramos denied fault at the scene and whether she received a citation.

There are two issues with Perez' argument. First, Perez' counsel did not make a contemporaneous objection to this line of questioning at trial. "By not making a

14

contemporaneous objection at trial to the admission of such evidence, the appellants failed to preserve their issue for appeal." *Estate of Mills v. Mangosing*, 44 Kan. App. 2d 399, 428, 238 P.3d 293 (2010).

Second, after Ramos' counsel's questioning of the investigating officer, the district court elected sua sponte to give a curative jury instruction, which read:  "Whether or not Defendant was issued a citation is not relevant and should not be considered by you." Generally, prejudice from an improper admission of evidence can be cured by an admonition. *Walston v. Piquard*, No. 97,805, 2008 WL 4291475, at *9 (Kan. App. 2008) (unpublished opinion) (citing *State v. McGhee*, 226 Kan. 698, 702, 602 P.2d 1339 [1979]). Even if we were to assume that error was created by the testimony elicited by Ramos' counsel, "[i]t is only in the extreme case that a lawyer's misconduct cannot be cured by instructing the jury to disregard it." *Tetuan v. A.H. Robins Co.*, 241 Kan. 441, 479, 738 P.2d 1210 (1987). Here, the district court cured any possible prejudice by giving the jury a curative instruction.

Therefore, the district court did not err in denying Perez' motions for a new trial on this basis. This argument on appeal is without merit.

II.     DID THE DISTRICT COURT ABUSE ITS DISCRETION IN PROHIBITING PEREZ FROM PRESENTING PROOF OF RAMOS' NEGLIGENCE?

Second, Perez argues that the district court erred in denying his motions for a new trial because Ramos only stipulated to "fault" and not to "negligence." Specifically, he argues that because of this, he was still required to prove the elements of negligence.

Perez makes four arguments in support:  (1) He should have been allowed to present proof that Ramos was negligent; (2) he should have been allowed to present proof that Ramos' negligence was the direct cause of his injury; (3) he should have been able to

15

present proof of what a reasonably careful person would have done to avoid harming others; and (4) Ramos' motion in limine regarding the reptile theory should have been denied.

As we have already discussed, Ramos' admission to fault was proper. Perez' attempt to distinguish between "fault" and "negligence" is frivolous. Because the admission was proper, no detailed analysis of Perez' arguments is necessary.

Moreover, Perez fails to properly present these issues to us for three reasons. First, as a general matter, the burden is on the party making a claim of error to designate facts in the record to support that claim; without such a record, the claim of error fails. *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 644, 294 P.3d 287 (2013). Second, K.S.A. 60-404 generally precludes an appellate court from reviewing an evidentiary challenge absent a timely and specific objection made on the record, which can be accomplished by a contemporaneous objection at trial or preserved through a standing objection. See *State v. Holman*, 295 Kan. 116, 127, 284 P.3d 251 (2012), *overruled on other grounds by State v. Dunn*, 304 Kan. 773, 375 P.3d 332 (2016). Third, "[t]he court may presume that a factual statement made without a reference to volume and page number has no support in the record on appeal." Supreme Court Rule 6.02(a)(4) (2018 Kan. S. Ct. R. 35).

The oral motion for a new trial is not contained in the record on appeal; Perez' written motion for a new trial was only added belatedly after oral argument and after we questioned Perez' counsel during oral argument about key parts of the record being missing. It is unclear to us what specific evidence Perez was actually precluded from presenting. Some indication of what evidence that he now complains was excluded can be gleaned from a review of his brief on appeal.

In his brief, Perez cites to several rules of the road found in the Kansas Driving Handbook. Yet those exhibits were not listed in the final pretrial order, and without the entire trial transcript being included in the record on appeal, there is simply no way to know if Perez attempted to admit these pieces of evidence or, frankly, any other evidence at trial relating to negligence. Perez also argues that he should have been allowed to present evidence that Ramos' negligence was the direct cause of his injury. From the limited record, it appears that Perez was allowed to argue that Ramos' negligence was the proximate cause of his injuries. However, it appears the jury did not find that he proved Ramos' negligence was the cause of all of his alleged injuries. Ramos admitted fault, Perez was permitted to prove what injuries that fault caused, and the jury determined that fault did not cause the neck surgery Perez eventually needed.

Additionally, Perez argues that he should have been allowed to present golden rule evidence to the jury that it is the conscience of the community and is making a decision on behalf of the community. Finally, he argues that the district court's anti-reptile theory order in limine was improper. For context, the reptile theory is a jury influence tactic created by an attorney and a jury consultant. Highly summarized, this theory begins with the premise that neither reason (application of the law) nor sympathy (pity for the plaintiff) will motivate jurors to award a larger verdict. The only way to return such a favorable verdict is to appeal to jurors' survival instincts (coined as their "reptilian brains"). The goal is to persuade jurors that their own safety is at risk and that a larger plaintiff's verdict will make them safer by making their community safer. When employing the reptile theory, a plaintiff's lawyer is to avoid golden rule theory arguments, as those are generally prohibited. Rather, a plaintiff's lawyer tries to establish several generic "safety rules"—such as rules of the road—which may or may not have anything to do with the specific facts of the case. Reliance on these safety rules then activates the survival instinct of the jurors and prompts the jury to return a higher verdict.

Importantly, there appears to be no renewal of Perez' prior objection to the exclusion of negligence evidence or a standing objection made in the record on appeal. If there was one, Perez fails to point to the record where this occurred.

We find Perez' second issue on appeal meritless for two reasons. First, the record is insufficient for this issue to be properly analyzed. There is no indication of exactly what evidence Perez complains should have been admitted in the record on appeal, mainly because the entire trial transcript and the district court's denial of these motions is missing from the record on appeal. Perez has the duty to designate a record on appeal to support his claim, and he has failed to do so. See *Friedman*, 296 Kan. at 644.

Second, there is no indication in the record that Perez renewed his objection to the exclusion of this evidence, nor does Perez provide a record cite to where he did so. We are precluded from reviewing this issue because there was no contemporaneous or standing objection made by Perez. See *Holman*, 295 Kan. at 127.

The district court did not err in denying Perez' motions for a new trial on these grounds.

III.    DID THE DISTRICT COURT ABUSE ITS DISCRETION IN LIMITING PEREZ' INQUIRIES DURING VOIR DIRE TO ISSUES ONLY AFFECTING DAMAGES?

Finally, Perez argues that the district court should have granted his motions for a new trial because he did not have the opportunity to select competent jurors without bias because his questions at voir dire specifically relating to the case were limited to the question of damages.

Unfortunately for Perez, he failed to request inclusion of the voir dire transcript in the record on appeal. Again, it was Perez' burden to designate a record sufficient to

18

support his claim; without such a record, the claim of error fails. See *Friedman*, 296 Kan. at 644. Because there is an insufficient record to determine if the district court abused its discretion in limiting counsel's inquiries at voir dire, Perez cannot meet his burden to show that the district court abused its discretion. The district court did not err in denying Perez' motions for a new trial.

Affirmed.